# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

TIE QIAN,

          Appellant,

                                  **CASE NO. 10-151141FF**

vs.

ERIC K. SHINSEKI, as
Secretary of the Department of
Veterans Affairs,

          Appellee.

_____/

---

## APPELLANT'S INITIAL BRIEF

---

Mark J. Berkowitz, P.A.
1620 W. Oakland Park Blvd.
Suite 300
Ft. Lauderdale, Florida 33311
(954) 527-0570 Telephone
(954) 915-3072 Telecopier
E-mail: mjb2157@aol.com.
Fla. Bar No. 369391

# TABLE OF CONTENTS

Page

1. Table of Authorities                                    -ii-

2. Statement Regarding Oral Argument                       -iv-

3. Statement of Jurisdiction                               -v-

4. Standard of Review                                      -vi-

4. Statement of the Issues                                 -vii-

5. Statement of the Case                                   1

6. Statement of the Case and Facts                         4

7. Summary of the Argument                                 14

8. Argument                                                16

   Appellant Was Denied Procedural Due Process             16

   The District Court Erred By Not Allowing                19
   Appellant to Pursue His Discrimination Claim

9. Conclusion                                              21

10. Certificate of Service                                 22

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

1.  *Bishop* v. *Wood*, 426 U.S. 341, 96 S.Ct. 2074,          18
    48 L.Ed.2d 684 (1976).

2.  *Board of Regents* v. *Roth,* 408 U.S. 564,              18
    92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

3.  *Boddie* v. *Connecticut,* 401 U.S. 371, 91 S.Ct.       18
    780, 28 L.Ed.2d 113 (1971).

4.  *Bonner* v. Prichard, 661 F.2d 1206 (11th Cir. 1981).   19

5.  *Copeland* v. *Housing Authority of Hollywood*,          19
    358 Fed. Appx. 144 (11th Cir. 2009).

6.  *Copeland Motor Co.* v. *General Motors Corp.*,          20
    199 F.2d 566 (5th Cir. 1952).

7.  *Garvey* v. *Vaughn*, 993 F.2d 776 (11th Cir. 1993).    20

8.  *Griffin* v. *Wainwright*, 772 F.2d 822 (11th Cir. 1985).  20

9.  *Hill* v. *U.S. Postal Service*, 961 F.2d 153 (11th Cir. 1992).  21

10. *Hunt* v. *Department of the Air Force,* 29 F.3d 583    21
    (11th Cir. 1994).

11. *Johnson* v. *Pullman, Inc.,* 845 F.2d 911 (11th Cir. 1988).    21

12. *Lampkin-Asam* v. *Volusia County School Board*,    20
    261 Fed.Appx. 274 (11th Cir. 2008).

13. *Moore* v. *Florida*, 703 F.2d 516 (11th Cir. 1983).    20

14. *Northeast Georgia Radiological Associates* v. *Tidwell*,    18
    670 F.2d 507 (5th Cir. Unit B 1982).

15. *Sessions* v. *Rusk State Hospital*, 648 F.2d 1066    22
    (5th Cir. Unit A 1981).

16. *Shaw* v. *Hospital Authority of Cobb County,*    19
    614 F.2d 946 (5th Cir. 1980).

17. *Wisconsin* v. *Constantineau,* 400 U.S. 433, 91 S.Ct.    18
    507, 510 L.Ed.2d 515 (1966)

18. *Woodbury* v. *McKinnon*, 447 F.2d 839 (5th Cir. 1971).    20

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellant contends that oral argument would assist the Court in resolving important factual and legal issues.

## <u>STATEMENT  OF JURISDICTION</u>

The Court has jurisdiction over this matter, pursuant to 28 U.S. C. Section 1332, because the subject matter concerns cases arising under the Constitution and laws of the United States.

## <u>STANDARD OF REVIEW</u>

This Court reviews a district court summary judgment order on a de novo basis. *See, McCovey* v. *Baxter Healthcare Corp*., 298 F.3d 1333, 1357 (11th Cir. 2002).

## STATEMENT OF THE ISSUES

### A.

WHETHER THE DISTRICT COURT ERRED BY DENYING

APPELLANT PROCEDURAL DUE PROCESS.

### B.

WHETHER THE DISTRICT COURT ERRED BY NOT ALLOWING

APPELLANT TO PURSUE HIS DISCRIMINATION CLAIM.

## STATEMENT OF THE CASE

On November 4, 2009, Appellant, Tie Qian, M.D. ("QIAN"), a former staff physician,[1] of Chinese origin, at the Veterans Administration ("VA") Hospital in Miami, Florida, filed a *pro se* Complaint, in the United States District Court for the Southern District of Florida, alleging that the Appellee, the United States Department of Veterans Affairs, had improperly revoked his hospital staff privileges,[2] in violation of fundamental due process principles; without following the mandated hearing procedures, as set forth in the VA Medical Staff By-Laws and Rules, Handbooks 1110.19 and 1110.17, as well as VHA Directive 2004-054. **[R: 1].**  In addition, QIAN further purportedly alleged in his *pro se* Complaint, that the Appellee, the United States Department of Veterans Affairs ("Agency"), had subjected him to unlawful disparate treatment, based upon his national origin, a prohibited discriminatory practice, in violation of Title VII of the Civil Rights Act of 1964. **[R: 1].**[3]

---

[1]    QIAN is board certified in both Physical Medicine and Rehabilitation and Spinal Cord Injury Medicine. **[R: 32].**

[2]    Of additional concern to the Appellant is that the revocation of his hospital staff privileges was reported to the National Practitioner Data Bank, as if standard due process had been provided. **[R: 1].**

[3]  QIAN had previously exhausted his administrative remedies with regard to his discrimination allegations, based upon national origin, before the Equal

The Agency filed a motion for summary judgment on July 26, 2010, contending that QIAN had no property interest in the termination of his employment, but conceded he had a property interest in his medical staff privileges. **[R: 29]**. However, the Agency contended that post-deprivation remedies were adequate to protect QIAN'S procedural due process rights. **[R: 29].**

On September 30, 2010, at a status conference before the Honorable Paul C. Huck, of the United States District Court for the Southern District of Florida, which was held two weeks prior to the scheduled trial date, the Court considered whether or not to allow QIAN to amend his Complaint, in order to include more detailed discrimination allegations, alleging that Appellant's hospital privileges were improperly denied, and his employment was terminated, based upon his national origin. **[R: 62]**. The district court refused to allow QIAN to amend his Complaint, in order to allow the inclusion of additional disparate treatment allegations, but instead, holding that the case was to move forward solely on Appellant's due process claim. **[R: 62].**

Although the district court initially noted some inconsistency between the nature of the process, which is required under the VHA Handbook, and the Medical Staff By-laws, Judge Huck proceeded to grant the Appellee's Motion for Summary Judgment. **[R: 66]**. In its analysis, the district court concluded that based upon an interpretive reading of the applicable policies, QIAN was not entitled to due process protections, under VHA Handbook 1100.19 [[1.a., upon the revocation of his hospital staff privileges. **[R: 66]**. Central in its analysis, was the district court's opinion, that a temporary

Employment Opportunity Commission. ("EEOC"). **[R: 62]**. He had previously alleged in the EEOC administrative proceeding, that he was denied procedural due process, based upon his national origin, through the summary denial of his hospital staff privileges. **[R: 62].**

employee, hired pursuant to 38 U.S.C. Section 7405 (a)(1)(A) is not entitled to due process considerations, prior to the revocation of medical staff privileges. **[R: 66].**

Final Judgment was entered by the district court, on behalf of the Appellee, the United States Department of Veterans Affairs, on October 6, 2010. **[R: 67].** A timely notice of appeal was filed on November 1, 2010. [**R: 68].**

## STATEMENT OF THE CASE AND FACTS

On July 1, 2001, QIAN was initially employed by the Agency, providing professional spinal cord treatment to patients as a staff physician; and he obtained a three-year appointment, ending on June 30, 2004, pursuant to 38 U.S. C. Section 7405. **[R: 29, 32].** QIAN'S employment was extended for one-year terms, on June 30, 2004 and June 30, 2005, as well as for an additional three-year term, commencing on June 30, 2006. **[R: 29, 32].**

On May 9, 2007, QIAN'S immediate supervisor, Dr. Alberto Martinez—Arizala, issued disciplinary correspondence, charging the Appellant, with the following infractions: (1) inappropriate copying and the pasting of notes into the computerized patient record system ("CPRS"), as well as (2) the alleged failure of QIAN to recognize, document and treat abnormal laboratory issues. **[R: 29, 32].** On June 1, 2007, Dr. John Vara ("VARA"), the VA Medical Center Chief of Staff; and Paul Magalian ("MAGALIAN"), the Acting Director of the VA Medical Center, issued correspondence to QIAN, informing him that a Special Professional Standards Board had been convened to conduct an administrative review,

"regarding questions of . . . clinical competence, including but not limited to inappropriate copying and pasting of patient medical notes in the computerized record system; failure to appropriately document interdisciplinary team medical notes; and failure to follow up on [a] patient's abnormal laboratory values." **[R: 29, 32].** This correspondence assured QIAN, that in any action involving a revocation of staff privileges, appropriate due process procedures would be afforded to him. **[R: 29].**

A Management Review Board, apparently convened as the "Professional Standards Board," as referenced in VARA'S June 1, 2007 correspondence, met on June 29, 2007, and this body reviewed documentation that had been compiled against QIAN. **[R: 29].** The Management Review Board issued correspondence to VARA on August 2, 2007, recommending that an investigative board be convened before recommendations were made, with regard to QIAN'S professional conduct. **[R: 29].** Nothing in the record indicates that QIAN, or his legal representative, were given an opportunity to appear before the Management Review Board, or to provide any rebuttal to the allegations, which had been previously submitted to this body.

On August 16, 2007, VARA and MAGALIAN notified QIAN, through correspondence, indicating that his medical staff privileges were

being suspended, for a period of thirty days, based upon the findings of the Special Professional Standards Board. **[R: 29].**[4]  On September 6, 2007, the Special Professional Standards Board Review Team was convened; and this body recommended the revocation of QIAN'S medical staff privilege. **[R: 29].**

On September 14, 2007, correspondence was sent by MAGALIAN to QIAN, stating that QIAN'S medical staff privileges were indeed being revoked. **[R: 29].**[5] Prior to the issuance of the revocation, QIAN had not been given the opportunity to review the evidence against him, nor had he been given the opportunity to respond to the allegations against him, or to even address the Special Professional Standards Review Board. **[R: 32].**[6] A second letter from VA management, also dated, September 14, 2007, indicated that QIAN was being dismissed from his employment with the Agency. **[R: 29].**

---

[4]   Immediately thereafter, QIAN requested a hearing, with regard to the disciplinary allegations. **[R: 32].**

[5] The correspondence further indicated that QIAN would be afforded proper procedural due process, pursuant to medical staff by-laws and the applicable VA handbooks. **[R: 29].**

[6]   Even as of October 31, 2007, despite numerous requests, QIAN still had not received all of the information, which had been used against him by VA management, to revoke his hospital medical staff privileges. **[R: 29].**

In February of 2008, approximately five months after his medical staff privileges had already been revoked, QIAN was afforded a hearing with respect to the allegations against him; and on April 7, 2008, Agency management concluded that the Medical Executive Committee had sufficient evidence to sustain the revocation of Appellant's medical staff privileges. **[R:  29]**. A hearing on the allegations against QIAN was not conducted until February 22, 2008. [**R: 29**].[7]

The Hearing Panel Report, dated April 7, 2008, supported the revocation of QIAN'S medical staff privileges. **[R: 29]**. On May 13, 2008, Nevin M. Weaver, the VA Network Director, denied QIAN'S appeal of the revocation of his medical staff privileges. **[R: 29]**.

The By-Laws of the Miami VA Hospital specifically mandate the invocation of specific notice and hearing procedures; prior to the implementation of a revocation of medical staff privileges. [**R: 29**]. These By-Laws state that the medical staff privileges of practitioners may be suspended for a period of thirty days, pursuant to the convening of a Special Professional Standards Board. **[R: 29]**.

---

[7]   A hearing panel was not formed until five months after the Appellant's termination, and at that point, he had lost key evidence for presentation in his case. [**R: 49**].

However, subsequent to any temporary suspension, the medical practitioner must be given written notice of the allegations against him and the right to have a representative of his own choosing. **[R: 29].** The practitioner must also be given the opportunity to review the evidence, which forms the basis for the disciplinary allegations; and he must also be given the opportunity to respond to any notice of intent, to proceed with privilege revocation, within ten days. **[R: 29].**

If a hearing is requested, the medical center director must appoint a review panel of three professionals within five business days to conduct a review of the evidence and the associated allegations. **[R: 29].** The review panel must complete its review and submit its report within fifteen days; and after that juncture, it is forwarded to the medical center director. **[R: 29].**

When the revocation of medical staff privileges is proposed and combined with a demotion or dismissal, the due process rights of the medical practitioner are to be afforded by requiring a hearing, under the dismissal process. **[R: 29].** For employees appointed under 38 U.S.C. Section 7405, the applicable By-Laws state that the proposed revocation, will be combined with actions to separate the employees under pertinent provisions of VHA handbook 5021 and the VHA supplement. **[R: 29].**

VHA Handbook 1100.19 addresses the credentialing and privileges extending to "[a]ll [VHA} individuals who are permitted by law and the faculty to provide patient care services  . . ." **[R: 47].** Paragraph 6 of VHA 1100.19 governs medical staff privileges.

Section 6(g)(3) addresses the revocation of privileges and states as follows:

> a.   Recommendations to revoke a practitioner's privileges will be made by the medical staff's executive committee, based upon a review and deliberation of clinical performance and professional conduct information. When revocation of privileges is proposed and combined with a proposed demotion or dismissal, the due process rights of the practitioner will be accommodated by the hearing provided under the dismissal process. Dismissal constitutes a revocation of privileges, whether or not there was a separate and distinct privileging action and will be reported without further review or due process to the NPDB. When revocation of privileges is proposed and not combined with a proposed demotion or dismissal, the due process procedures under reduction of privileges will pertain.

Subsection (b) of this section governs the revocation of privileges for permanent employees, appointed under section 38 U.S.C. Section 7401, and it provides that the privilege revocation will be combined with a proposed action to discharge the employee, pursuant to federal law. Subsection (c) of this Paragraph applies to probationary employees appointed under 38 U.S.C. 7401 (1), and it provides that the proposed revocation will be combined with probationary separation procedures, contained in MP—5, part II, chapter 4

and its VHA supplement. Subsection (d) provides that when revocation of privileges is proposed for employees, who are neither temporary, nor permanent employees, as described in subparagraph (3) (b) and (c), consideration must be given to the discharge or the removal of the employee. [**R: 47**].

Subsection 6 (g) (4), entitled, "Management Authority, states as follows:

Nothing in these procedures restricts the authority of management to temporarily detail or reassign a practitioner to non-patient care areas or activities, thus in effect suspending privileges while the proposed reduction of privileges or discharge, separation, or termination is pending. Further, the facility Director, on the recommendation of the COS, may summarily suspend privileges on a temporary basis, when there is sufficient concern regarding patient safety or specific practice patterns. Individuals appointed under the authority of 38 U.S.C. Section 7405 may be terminated when this is determined to be in the best interests of the VA, in accordance with the provisions of MP-5, Part II, Chapter 9 and its VHA supplements, without regard to the procedural requirements indicated.

**[R: 47].**

VHA Handbook 1100.17, Paragraph 6 (a) (2) states that, "(t)he physician must be offered due process (as outlined in VHA Handbook 1100.19, "Credentialing and Privileging, regarding reduction and revocation of privileges.") VHA Handbook 1100.17, Paragraph 6(b)(1) states that, "(p)rior to reporting to any SLB or NPDB, appropriate internal VA Medical Center due process procedures, pursuant to the provisions of VHA Credentialing and Privileging Policy regarding reduction and revocation of privileges, must be completed." VHA Handbook 1100.17 does not distinguish between temporary physicians appointed under 38 U.S.C. Section 7405 (a)(1) (A), from permanent employees, under 38 U.S.C. Section 7401(1). **[R: 47].**

Although VA Handbook 5021/3, Part VI, Paragraph 15 provides that a temporary employee appointed under authority of 38 U.S.C. Section 7405 (a)(1)(A), is not entitled to the invocation of specific procedures to review his or her termination from employment, Handbook 5021 does not apply to the revocation of medical staff privileges. The district court erroneously found in its order of summary judgment that this particular termination of employment provision is applicable to the revocation of medical staff privileges.

It is important to emphasize that QIAN received a temporary privilege suspension letter on August 16, 2007. **[R: 32].** Furthermore, although on August 17, 2007, QIAN specifically requested to review all pertinent documentary medical evidence, allegedly supporting the disciplinary charges against him, prior to the taking of final disciplinary action by the Agency, he was never provided with such an opportunity.[8]

Moreover, contrary to applicable policies and procedures, the die had already been cast, without any notice, or substantive participation by QIAN, since the Professional Standards Board[9] had already issued its report, regarding the applicable disciplinary allegations on August 2, 2007. **[R: 32].** The facility's Management Review Team recommended the permanent revocation of QIAN'S staff privileges on September 2, 2007; and the recommendation was adopted by the Agency on September 14, 2007. **[R: 32].** This final action was erroneously taken, despite the fact that QIAN had not reviewed the facts purportedly supporting the disciplinary allegations; he had not seen the report of the Professional Standards Board, nor was he given an opportunity, to either respond to the report, or to address the

_____

[8]  QIAN was to be able to submit his written response within ten business days. He also requested a copy of the Professional Standards Board Report, so that he could prepare a proper response to the disciplinary allegations. **[R: 32].**

[9]  Moreover, the post deprivation panel consisted of non-spinal cord specialists, which further undermined any notion of fundamental fairness.

revocation authority, prior to the implementation of the final revocation action. [**R: 32**]**.**

# SUMMARY OF THE ARGUMENT

The district court committed fundamental and reversible error, by approving the withholding of even minimal procedural due process from Appellant, prior to the revocation of his medical staff privileges. The district court erroneously found, in its order of summary judgment, that a particular termination of employment provision is applicable to the revocation of medical staff privileges.

However, regardless of the nature of the Agency's internal policies and procedures, with regard to revoking a physician's medical staff privileges, the physician's liberty interest, in those privileges, cannot be restricted, absent an adequate procedure, usually embodied by some form of hearing; and any decision to abridge the practitioner's liberty interest, must be grounded upon a rational basis, designed to further a legitimate state interest. No such procedural protections were implemented in this case.

Moreover, as a *pro se* litigant, Appellant was indeed entitled to special consideration from the district court. His right to pursue the attendant and related discrimination claim was clearly and erroneously abridged, contrary to substantive law.

Appellant is entitled to his day in court with regard to both of these points on appeal. Therefore, the district court's judgment must be vacated,

with instructions to permit Appellant to pursue his due process and discrimination claims.

## **ARGUMENT**

## APPELLANT WAS DENIED PROCEDURAL DUE PROCESS.

In concluding that QIAN was not entitled to due process protections, prior to the revocation of his medical staff privileges, the district court apparently relied upon VHA Handbooks 5021/3, and patently ignored, 1100.17[10] and 1100.19;[11] while stating that the VA Hospital By-Laws and Rules were inapplicable. **[R: 66].** This finding constituted fundamental reversible error; VA Handbook 5021/3, Part VI, merely mirrors a federal regulation, pertaining to the separation of temporary VA physicians from their employment, it is not a regulation pertaining to the revocation of medical staff privileges.[12]

---

[10] As noted above VHA Handbook 1100.17 does not distinguish temporary physicians, appointed under 38 U.S.C. Section 7405 (a)(1)(A), from permanent employees under 38 U.S.C. Section 7401.

[11] VHA Handbook 1100.19 states, ". . . temporary employees must be provided with due process procedures that are provided for reduction of privileges, in addition to the procedures contained in VA handbook 5021 for separation." **[R: 32].**

[12] The District Court was clearly wrong in stating that not every physician with medical staff privileges has a protected property interest in those privileges. [**R: 66**]. The applicable handbooks further substantiate a right to

Procedural due process rights derive from a property interest, in which the individual has a legitimate claim. *See, Board of Regents* v. *Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Once acquired, a property interest falls within the protection of procedural due process. *Bishop* v. *Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). A fundamental principle of procedural due process is that a person must be given a pre-termination hearing, prior to being deprived of any significant property interest. *See, Boddie* v. *Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential. See, *Wisconsin* v. *Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1966). This position was reaffirmed in *Board of Regents*, *supra,* which held that notice and a hearing would be required if the government imposed a stigma or disability that foreclosed his freedom to take advantage of other employment opportunities. *Id*., 408 U.S at 573, 92 S.Ct. at 2707.

A physician has a constitutionally protected property interest in medical staff privileges, where among other factors, the medical staff by-laws

---

meaningful procedural due process prior to the revocation of medical staff privileges**. [R: 49].**

contain a detailed procedure, which is to be followed when corrective action against a physician is deemed to be warranted. *See, Northeast Georgia Radiological Associates* v. *Tidwell*, 670 F.2d 507 (5th Cir. Unit B 1982).[13] In applying the same principles, here, it cannot be denied that QIAN has a constitutionally protected property interest in medical staff privileges. He has a liberty interest in some dimension emanating from his state created right to practice medicine.[14]

That liberty interest cannot be restricted, absent an adequate procedure, usually embodied by some form of hearing; and any decision to abridge the practitioner's liberty interest, must be grounded upon a rational basis, designed to further a legitimate state interest. *See, Shaw* v. *Hospital Authority of Cobb County,* 614 F.2d 946 (5th Cir. 1980). At a minimum, the practitioner must be given notice of the allegations against him and be provided with a reasonable opportunity to be heard;[15] the minimal due process, which was summarily denied to QIAN in this case. Even in the absence of written procedures outlining what process was due, the Agency

---

[13]   Under *Bonner* v. *Prichard*, 661 F.2d 1206 (11th Cir. 1981), decisions of the former Fifth Circuit are recognized as binding precedent within the Eleventh Circuit.

[14]   *See, Board of Regents* v. *Roth, supra.*

[15]    *See, Shaw* v. *Hospital Authority of Cobb County, supra.*

had a legal obligation to provide the minimal level of procedural due process, which it completely failed to provide in this case. On that basis alone, the judgment of the district court must be vacated and remanded. *See also, Woodbury* v. *McKinnon*, 447 F.2d 839 (5th Cir. 1971).

## THE DISTRICT COURT ERRED BY NOT ALLOWING APPELLANT TO PURSUE HIS DISCRIMINATION CLAIM.

The Eleventh Circuit has repeatedly noted the special care which *pro se* litigants must be treated; and it has further noted that such litigants "occupy a position significantly different from that occupied by litigants represented by counsel. *See, Moore* v. *Florida*, 703 F.2d 516, 520 (11th Cir. 1983); *Griffin* v. *Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). A *pro se* litigant should not be penalized by strict procedural rules, which might otherwise apply; if he or she was represented by counsel. *See, Garvey* v. *Vaughn*, 993 F.2d 776 (11th Cir. 1993).

Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education. Given the unique status of *pro se* litigants in our court system, it was reversible error to prohibit Appellant from amending his complaint before the district court, even though the deadline for the filing of amended pleadings had passed. *See, Lampkin-Asam* v. *Volusia County School Board*, 261 Fed. Appx. 274 (11th Cir. 2008);

*Copeland* v. *Housing Authority of Hollywood,* 358 Fed. Appx. 144 (11th Cir. 2009); see, also, *Johnson* v. *Pullman, Inc.,* 845 F.2d 911 (11th Cir. 1988).

Moreover, contrary to the view of the district court, there was no legal impediment to effectuating an amendment of the complaint, in order to allow Appellant to pursue his discrimination claim. Rule 15(c) of the Federal Rules of Civil Procedure allows an amendment of a pleading to relate back to the date of the original pleading, when:

> (2)    The claim or defense asserted in the amended pleading arose out of the conduct . . . set forth in the original pleading.[16]

Appellant's Title VII claim related to the same transaction or subject matter of the original pleading. Therefore, despite the fact that Appellant inadvertently missed the deadline for the filing of amended pleadings, on the basis of the substantive law, his amendment was legally cognizable. *See*, *Hill* v. *U.S. Postal Service*, 961 F.2d 153 (11th Cir. 1992); *Sessions* v. *Rusk State Hospital*, 648 F.2d 1066 (5th Cir. Unit A 1981); and *Copeland Motor Co.* v. *General Motors Corp.*, 199 F.2d 566 (5th Cir. 1952). Therefore, Appellant should have been allowed to amend his Complaint, to include his

---

[16]    *See also, Hunt* v. *Department of the Air Force,* 29 F.3d 583 (11th Cir. 1994).

assertions that he was denied medical staff privileges and continued employment, based upon impermissible disparate treatment.

## CONCLUSION

The district court committed reversible error[17] by not affording Appellant, even a modicum of procedural due process, prior to the revocation of his medical staff privileges. Irrespective of the Agency's seemingly complicated policies and procedures, QIAN has a constitutionally protected property interest in medical staff privileges, which cannot be abridged, absent some form of procedural protection. He was afforded not such protection in this case, and hence, the judgment of the district court must be vacated, with specific instructions to safeguard the procedural due process rights of the Appellant.

As a *pro se* litigant, QIAN occupies a special position, as opposed to those litigants who are represented by counsel. QIAN had a substantive discrimination claim and based upon applicable law, he should have been permitted to pursue that claim.

---

[17] As previously noted above, the revocation of medical staff privileges is particularly harmful to Appellant here, since the information on the revocation is communicated to the National Practitioner Data Bank.

The district court committed reversible error with respect to both points at issue. Therefore, the order of the district court must be vacated, in accordance with the long-standing precedent of the Eleventh Circuit.

Respectfully submitted,

Mark J. Berkowitz, P.A.

1620 W. Oakland Park Blvd.
Suite 300
Ft. Lauderdale, Florida 33311
(954) 527-0570 Telephone
(915) 915-3072 Telecopier
E-mail: mjb2157@aol.com
Fla. Bar No. 369391

By: /s/ Mark J. Berkowitz
       Mark J. Berkowitz

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent by regular mail on this 4th day of February, 2011, to Karin Wherry, Assistant U.S. Attorney, 99 N.E. 4th Street, Suite 300, Miami, Florida 33132.

/s/ Mark J. Berkowitz
Mark J. Berkowitz