IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **10-15141-FF**

Tie Qian,

Appellant,

- versus -

Secretary, Department of Veteran Affairs,

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

<u>BRIEF FOR THE UNITED STATES</u>

> Wifredo A. Ferrer
> United States Attorney
> Attorney for Appellee
> 99 N.E. 4th Street
> Miami, Florida  33132-2111
> (305) 961-9129

Anne R. Schultz
Chief, Appellate Division

Laura Thomas Rivero
Assistant United States Attorney

Lisette M. Reid
Assistant United States Attorney

Of Counsel

**Tie Qian v. Secretary, Department of Veterans Affairs, Case No. 10-15141-FF**

**Certificate of Interested Persons**

Undersigned counsel for the United States of America hereby certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case who were not included in the Certificate of Interested Persons set forth in appellant's brief:

Berkowitz, Mark Jay

Ferrer, Wifredo A.

Fox, Susan W.

Goldstein, Stuart

Greenleaf, Kimberly

Hope, Keith

Huck, Hon. Paul

Mulcahy, Karen

O'Sullivan, Hon. John

Qian, Tie

Reid, Lisette M.

Rivero, Laura Thomas

Schultz, Anne R.

Shinseki, Eric K.

Sloman, Jeffrey H.

**Tie Qian v. Secretary, Department of Veterans Affairs, Case No. 10-15141-FF**

**Certificate of Interested Persons (Continued)**

Wherry, Karin

_____

Lisette M. Reid
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page:**

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   c-1

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

Statement of the Case:

       1.    Course of Proceedings and Disposition in the Court Below .. . . . .    1

       2.    Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

             A.  Qian's Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

             B.  The VA Answer and Affirmative Defenses . . . . . . . . . . . . . . .    4

             C.  The VA's Summary Judgment Motion. . . . . . . . . . . . . . . . . . .    4

             D.  Qian's Response. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

             E.  The VA's Reply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

             F.  District Court Order Requesting Supplementation of

                 the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

             G.  Qian's Supplemental Briefing. . . . . . . . . . . . . . . . . . . . . . . . . .   11

             H.  The VA's Supplemental Briefing. . . . . . . . . . . . . . . . . . . . . . . .   11

             I.  The District Court's Summary Judgment Order. . . . . . . . . . . .   14

# Table of Contents

## (continued)

**Page:**

3.    Standards of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Argument

I.    The District Court Properly Granted Summary Judgment in Favor of the

VA On Qian's Medical Staff Privileges Claim.. . . . . . . . . . . . . . . . . .  18

II.    The District Court Properly Declined To Permit Qian To Pursue A Title

VII Discrimination Claim When Qian Failed To Raise Any Allegations

Of Discrimination In His Complaint.. . . . . . . . . . . . . . . . . . . . . . . . . .  22

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

iii

# Table of Citations

**Cases:**                                                           **Page:**

Anderson v. Liberty Lobby, Inc.,

   477 U.S. 242, 106 S. Ct. 2505 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Bost v. Federal  Express Corp.,

   372 F.3d 1233 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Brown v. General Services Administration,

   425 U.S. 820, 96 S. Ct. 1961 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

Caldwell v. Martin Marietta Corp.,

   632 F.2d 1184 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Celotex Corp. v. Catrett,

   477 U.S. 317, 106 S. Ct. 2548 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Farley v. Nationwide Mutual Insurance Co.,

   197 F.3d 1322 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Foman v. Davis,

   371 U.S. 178, 83 S. Ct. 227 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Hall v. United Insurance Co. Of America,

   367 F.3d 1255 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Jennings v. BIC Corp.,

   181 F.3d 1250 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

## Table of Citations (Continued)

**Cases:**                                                            **Page:**

Matsushita Electric Industrial v. Zenith Radio  Corp.,

    475 U.S. 574, 106 S. Ct. 1348 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

\* Mayle v. Felix,

    545 U.S. 644, 125 S. Ct. 2562 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . .  29, 30

Powers v. Graff,

    148 F.3d 1223 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16, 28

Tullius v. Albright,

    240 F.3d 1317 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

United States v. Humphrey,

    164 F.3d 585 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

**Statutes & Other Authorities:**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

28 U.S.C. § 2254. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

38 U.S.C. § 7401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 19

38 U.S.C. § 7405. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, passim

42 U.S.C. § 1981. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

42 U.S.C. § 2000. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 26

42 U.S.C. § 11112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Fed. R. App. P. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

v

**Table of Citations (Continued)**

| **Statutes & Other Authorities:** | **Page:** |
|---|---|
| Fed. R. Civ. P. 15.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29, 30 |
| Fed. R. Civ. P. 56.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |

### Statement of Jurisdiction

The jurisdiction of this Court is invoked under 28 U.S.C. § 1291.

**Statement of the Issues**

1.   Whether the district court properly granted summary judgment to the Department of Veterans Affairs (the "VA") because Dr. Qian, who had been hired by the VA on a temporary appointment status, was not entitled to due process.

2.   Whether the district court plainly erred in not permitting Dr. Qian to amend his complaint two weeks before trial to allege the facts relevant to a Title VII claim of discrimination where the amendment would have occurred after the expiration of the limitation period for filing the discrimination claim, Dr. Qian had admitted that he had no evidence that the VA had discriminated against him, and the resolution of the discrimination claim rested upon whether he was legally entitled to receive due process.

**Statement of the Case**

**1.    Course of Proceedings and Disposition in the Court Below**

On November 4, 2009, appellant Dr. Tie Qian, a physician at the VA filed a pro se complaint against the VA under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., alleging that he was dismissed from his position as a VA physician, his medical staff privileges were revoked, and the revocation was reported to the National Practitioner Data Bank in violation of his constitutional due process rights (DE1).  On February 4, 2010, the VA filed an answer and affirmative defenses (DE9).  On July 14, 2010, the VA filed a motion for summary judgment (DE29).  On

August 18, 2010, Qian filed a response (DE32) and on August 30, 2010, the VA filed a reply (DE34). On September 9, 2010, Qian filed a response to the VA's reply (DE46).

On September 7, 2010, the district court entered an order requiring supplemental briefing by the parties (DE44). Qian filed a supplemental brief on September 15, 2010 (DE49), the VA filed a response and supplemental authority on September 10 and on September 24, 2010 (DE47, 53), and Qian filed more supplemental briefing on September 28, 2010 (DE58). On September 30, 2010, the district court held a status conference on the case (DE62).

On October 7, 2010, the district court entered an order granting summary judgment to the VA and final judgment in favor of the VA (DE66, 67). Qian filed a timely notice of appeal on November 1, 2010 (DE68).

2.  **Statement of the Facts**

A.  **Qian's Complaint**

In his <u>pro se</u> complaint, Qian alleged that he was a board-certified physician specializing in physical medicine, rehabilitation and spinal cord injury (DE1). He stated that he had worked at the VA hospital in Miami, Florida, from July 2001 to September 2007. He further stated that in 2006, he was rewarded with full performance pay for having rendered high quality patient care and for academic

2

achievement (id.).  According to Qian, in 2006 he was asked to do "risky clinical research involving non-VA subjects without appropriate protection" and when he refused, his medical records were "reviewed behind [his] back" (id.).

Qian claimed that he was informed that his hospital privileges were revoked on September 14, 2007, for the following reasons: (1) copying and pasting in progress notes of patient electronic medical records; (2) failure to appropriately follow-up on abnormal lab values; (3) failure to adequately document physical examinations and physical findings and (4) falsification of medical records (id.).  Qian further claims that his hospital privileges were revoked before he was provided with "any of the evidence or documentation upon which the decision was based" (id.).  According to Qian, the VA Acting Director made the decision "based on biased information without any of [Qian's] input" (id.).  Qian's employment with the VA was terminated on September 28, 2007, and on July 1, 2008, Qian's loss of hospital privileges was reported to the National Practitioner Data Bank (id.).

Qian maintained that the VHA Directive 2004-054, page 9, line 11 and the Medical Staff Bylaws & Rules and Regulations 2007, page 23 provided for due process procedures that he was not afforded (id.).  He demanded reinstatement to his position, full back pay and restoration of all benefits (id.).

## B.  The VA Answer and Affirmative Defenses

The VA admitted that Qian was board-certified in Physical Medicine and Rehabilitation and had a sub-certification in Spinal Cord Injury medicine and that he worked at the Miami VA from July 2001 until his employment was terminated on September 28, 2007 (DE9).   The VA also admitted that the doctor's hospital privileges were terminated and that the termination of privileges was reported to the National Practitioner Data Bank (id.).  The VA denied Qian's allegations that he was asked to do "risky clinical research" and denied Qian's allegations that he did not receive due process and a panel review of his termination and loss of clinical privileges and denied that he was entitled to reinstatement, back pay or damages (id.).

As affirmative defenses, the VA noted that Qian had failed to state a claim upon which relief could be granted and that any award of back pay under Title VII should be offset based upon benefits and payments received from collateral sources (id.).

## C.  The VA's Summary Judgment Motion

In its summary judgment motion, the VA explained that Qian was employed in a temporary appointment status under 38 U.S.C. § 7405(A)(1) throughout his term of employment with the VA (DE29).   The VA further explained that the VA employed individuals on a temporary basis in response to temporary needs of the

4

service and that temporary employees may be terminated any time and have no entitlement to be converted to permanent appointment (id.).

On May 9, 2007, Alberto Martinez-Arizala, Qian's direct supervisor, sent Qian a letter of counseling because Qian had continued to copy and paste notes in the Computerized Patient Record System (CPRS) in violation of VA hospital policy (id.). The letter noted that this was a follow-up to an April 11, 2007, discussion with Qian on this same issue and that copying and pasting notes constituted plagiarism of the medical records. Martinez-Arizala further advised in the letter that Qian needed to address and resolve his conduct and that his progress would be monitored with monthly chart review audits (id.).

On June 1, 2007, John R. Vara, M.D., Chief of Staff, and Paul D. Magalian, Acting Director, Department of Veteran Affairs, Medical Center, wrote a letter to Qian notifying him that a Professional Standards Board was being appointed to complete an administrative review as prescribed in VHA Handbook 1100.19 and the Medical Staff Bylaws of the Miami VA Healthcare System regarding concerns about his clinical competence, including but not limited to inappropriate cutting and pasting of patient medical notes in the CPRS, failure to appropriately document interdisciplinary team medical notes, and failure to follow-up on patient's abnormal laboratory values (id.).

On August 2, 2007, a Management Review Board comprised of three physicians released a report indicating that after review of several of Qian's patient's records, it had found instances of "significant deviations from the standard of care" with "potential serious harm to patients" and recommended that an official investigation board be convened to evaluate Qian's professional performance. On August 16, 2007, Dr. Vara wrote a letter to Qian notifying him that his clinical privileges would be suspended immediately because of the potential substandard quality of care regarding his clinical competence, including but not limited to inappropriate copying and pasting of patient medical notes in the patient record system, failure to appropriately document interdisciplinary team medical notes, failure to follow-up on patient's abnormal laboratory values and findings of possible falsification of a patient's medical record (id.).

On September 6, 2007, the Professional Standards Board consisting of physicians and consultants completed its review of Qian's clinical practice and professional conduct and concluded that Qian had "demonstrated a sustained pattern of unacceptable clinical practice and professional conduct that was not remedied despite repeated episodes of formal counseling."(id.). The Board further concluded that Qian's conduct "pose[d] an unacceptable risk to patients and represents a significant deviation from standard professional practice" (id.). The Board

6

recommended that the Management Review Team take action to revoke Qian's medical staff appointment and clinical privileges (id.).

On September 14, 2007, Magalian wrote to Qian notifying him that his clinical privileges were revoked effective immediately based upon the findings of the Management Review Team and explained that the Team had concluded that his unacceptable clinical practice and professional conduct had not been remedied despite repeated episodes of formal counseling (id.). Also, on September 14, 2007, Larry Brinkman, Chief, Human Resources Management Service, wrote to notify Qian that his appointment as a physician at the VA was terminated effective September 28, 2007, and that his clinical privileges were revoked along with his termination of appointment (id.). The letter advised Qian that he could request a panel hearing where he could be represented by counsel and call witnesses and that he could appeal the panel's decision (id.).

Further, on February 22, 2008, a Review Panel reviewed the termination of Qian's privileges and held a hearing at which Qian appeared with counsel and discussed each of the allegations evaluated by the Professional Standards Board and the Management Review Team (id.). The Review Panel consisted of three physicians from three different VA hospitals (id.). On April 7, 2008, the Review Panel issued its report advising that it had unanimously concluded that the evidence justified the

revocation of privileges (id.).  In an undated letter mailed on or about April 15, 2008, Mary D. Berrocal, Medical Center Director, advised Qian that his revocation of privilege would be reported to the National Practitioner Data Bank.  In a letter dated May 13, 2008, Nevin Weavor, Network Director, advised Qian that he concurred with the revocation of his VA Medical Center privileges and that this decision constitutes the final decision which is not subject to further appeal (id.).  On July 1, 2008, the VA reported Qian's revocation of privileges to the National Practitioner Data Bank (id.).

In the summary judgment motion, the VA asserted that Qian had not made any claims in his complaint in support of a Title VII discrimination claim and had instead asserted only "due process" claims.  Qian had further admitted during a deposition that he had no proof or evidence that he was terminated because he was Chinese, only that the VA had allegedly failed to follow proper procedures prior to his termination (id.).  Because Title VII does not provide redress for procedural due process, his Title VII claim should be dismissed (id.).

The VA further asserted that Qian was not denied due process (id.).  First, because he was a temporary employee, he had no property interest in his employment and, as such, he was not entitled to due process protection.  The VA admitted, however, that Qian arguably had a protected property interest in his medical staff privileges under the Miami VA Healthcare System Medical By-laws (the "Miami

Staff Bylaws"), which required the Miami VA to grant a "fair hearing and appeals process [which] allows the affected individual an opportunity to defend herself or himself." The VA further asserted that if, in fact, Qian was entitled to due process, the due process that he was given was constitutionally adequate. Qian did not dispute that he appeared with counsel at a hearing on February 22, 2008, before a Review Panel and presented evidence and argument in opposition to the revocation of privileges (id.). Moreover, the hearing occurred well before July 1, 2008, when the VA reported Qian's revocation of privileges to the National Practitioner Data Bank (id.).

### D.  Qian's Response

In a pro se response, Qian argued that the Medical Staff By-laws and the Fourteenth Amendment of the Constitution entitled him to a hearing before his privileges could be revoked (DE34). He also argued that 42 U.S.C. § 11112(c)(3) also required adequate notice and a hearing before revocation of his medical privileges could be reported to the National Practitioner Data Bank. In his response, Qian referred to an incident in which a Caucasian patient allegedly refused to permit him to examine him so that the patient could receive an examination from a Caucasian physician (id.). He claimed that this incident resulted in the accusation of falsification of medical records that led to his revocation of privileges. He claimed,

9

however, that he did examine the patient.  He further complained that while cutting and pasting patient records is "strongly discouraged," it was not prohibited by hospital policy and was not plagiarism (id.).

### E.  **The VA's Reply**

In its reply, the VA again noted that Qian had not presented any evidence of Title VII discrimination and had raised only due process claims (DE34).  The VA further noted that as a temporary employee, Qian was not entitled to due process before his employment was terminated.  The VA also noted that, to the extent that due process was required for the revocation of his medical staff privileges, the VA received and considered a supplemental written response from Qian dated November 6, 2007, and held a hearing before a Review Panel on February 22, 2008, where Qian appeared with counsel.  This hearing was held before the revocation of privileges was reported to the National Practitioner Data Bank (id.).  Thus, even if a hearing was required prior to the revocation, any error was cured by the subsequent hearing held before the revocation was made public in the National Practitioner Data Bank (id.).

### F.  **District Court Order Requesting Supplementation of the Record**

After reviewing the parties' pleadings, the district court issued an order requesting a copy of the "dismissal process" referenced in Section V.2.a of the Medical Staff Bylaws, which Qian relied upon to support his due process claims, and

10

VHA Handbook 5021/4 and its VHA Supplement referenced in Section V.2.a.iii of the Medical Staff Bylaws (DE39, 44). The court also requested memoranda of law from both parties explaining how those provisions applied to Qian's due process claims and their relationship to VHA Handbook 5021/3 Part VI ¶ 15, which appeared to preclude due process to all staff members hired pursuant 38 U.S.C. § 7405(a)(1)(A) (id.).

### G. **Qian's Supplemental Briefing**

On September 15, 2010, Qian submitted supplemental briefing to the court along with the sections of the Medical Staff Bylaws and VHA Handbook 1100.19 that the district court had referenced (DE49). He maintained that both the Bylaws and the Handbook require the VA to provide due process procedures relevant to the reduction of hospital privileges (id.). Qian also argued that VHA Handbook 1100.17 required that physicians be given due process before the revocation of hospital privileges (id.).

### H. **The VA's Supplemental Briefing**

On September 10, 2010, the VA submitted supplemental briefing to the court in which it explained that Qian was not entitled to due process prior to his termination or prior to revocation of his hospital privileges (DE47). The VA explained that as a temporary employee, Qian did not have a protected property interest in his job with the VA. Further, VHA Handbook 1100.19 at paragraph 6.g.3(a) stated that a

11

dismissal constitutes a revocation of hospital privileges and the revocation should be reported to the National Practitioner Data Board, without need for further review or additional due process.  The Miami Medical Bylaws also explained that dismissal constituted a revocation of hospital privileges.  As a result, Qian was not entitled to any due process before his hospital privileges were revoked (id.).

The VA noted, however, that Qian did receive an evidentiary hearing before his revocation of privileges was sent to the National Practitioners Data Bank and Qian appeared with counsel at that hearing (id.).

The VA attached to its response a copy of VHA Handbook 1100.19, relevant portions of VHA Handbook 5021/3, the Miami Medical Staff Bylaws, VHA Handbook 1100.17, and correspondence sent to Qian by the VA (id.).

On September 24, 2010, the VA submitted the following additional documents: VHA Handbook 1100.18, VHA Handbook 5001, Transmittal Sheet, April 15, 2002 (MP-5 rescinded), and VHA Directive 5001 (DE53). The VA explained that VHA Directive and Handbook 5021, Employee/Management Relations, replaced the provisions of MP-5 relating to adverse and disciplinary actions.  Furthermore, VHA Handbook 5021, Part VI, paragraph 15 expressly excludes physicians appointed under the authority of 38 U.S.C. § 7405, which governs temporary appointments, from the due process provisions for disciplinary and adverse actions, including access

12

to the administrative grievance procedure or appeal to the Disciplinary Appeals Board.  Only permanent, full-time physicians appointed under 38 U.S.C. § 7401(1) are entitled to those procedures.

The VA further explained that credentialing and privileging of healthcare providers is a separate, but concurrent, matter from the healthcare provider's employment (id.).  VHA Handbook 1100.19, Credentialing and Privileging, governs the granting and reduction or removal of privileges to practice medicine.  VHA Handbook 1100.19, paragraph 6(g)(3)(a) provides that "[d]ismissal constitutes a revocation of privileges whether or not there was a separate and distinct privilege action . . ." and VHA 1100.19, paragraph 6(g)(4) provides that "[i]ndividuals appointed under authority of 38 U.S.C. § 7405 may be terminated when it is determined to be in the best interest of the VA . . . without regard to the procedural requirements indicated." (Id.).  The VA also explained that, by their own terms, the Miami Bylaws only provide due process for physicians appointed under § 7401(1) (id.).

The VA again asserted that, based upon the Miami Medical Staff Bylaws and VHA Handbook, Qian received greater procedural safeguards than was required (id.).

13

## I.  **The District Court's Summary Judgment Order**

After reviewing and discussing the relevant federal statutes and regulations, including VHA Handbooks 5021, 1100.17, 1100.19, and the Miami Medical Staff Bylaws, the district court concluded that, because Qian was a temporary employee, his employment could be terminated and his privileges revoked without receiving the protections of a review process (DE66).

First, the court determined that the statute under which Qian was hired as a temporary employee, 38 U.S.C. § 7405(a)(1)(A), did not provide for any due process procedures when facing an adverse employment action.  Thus, the court concluded, Qian had no statutorily-protected property interest in his medical privileges (id.). Second, the court reviewed the relevant federal regulations one-by-one. The court observed that VHA Handbook 5021 controls employee/management relations and details the procedures that must be followed for involuntary separations.  Part VI describes separation procedures for employees appointed under 38 U.S.C. § 7405(a)(1)(A) and, the court noted, specifically states that reviews by Professional Standard Boards or Disciplinary Boards do not apply (id.).

The court also considered VHA Handbook 1100.17 which sets forth the parameters for reporting a physician to the National Practitioner Data Bank following an "adverse action" including suspension and revocation of privileges (id.).

14

Handbook 1100.17 cross-references VHA Handbook 1100.19 provisions for Credentialing and Privileging policy regarding procedural protections prior to the revocation of privileges. The court noted, however, that VHA Handbook 1100.19, paragraph 6.g.4 specifically excludes employees hired on a temporary basis under 38 U.S.C. § 7405(a)(1)(A), as Qian was (id.). VHA Handbook 1100.19 states only that temporary employees "may be terminated when this is determined to be in the best interests of the VA" (id.). The court found that the review process conducted by Dr. Vara and Mr. Magalian detailed numerous reasons why Qian should be terminated and was sufficient to establish that the termination was "in the best interests of the VA." (id.).

Finally, the court concluded the review procedures in the Bylaws need not be considered because the preamble to the Bylaws stated that the Miami Medical Staff Bylaws and the VHA Handbooks must not conflict and that, to the extent that they did, the VHA Handbooks were the controlling authority. The Bylaws explicitly stated that it "[did] not create any rights or liabilities not otherwise provided for in the VHA regulations or federal law and regulations"(id.). The court ruled that because VHA Handbook 1100.19 permitted termination and revocation of privileges for temporary employees without the protections of a review process, Qian was not entitled to due process and the VA was entitled to summary judgment (id.).

15

3.    **Standard of Review**

The Court of Appeals reviews the district court's grant of summary judgment de novo, reviewing all facts and reasonable inferences in the light most favorable to the non-moving party, and applying the same standard used by the district court. Tullius v. Albright, 240 F.3d 1317, 1319-20 (11th Cir. 2001). Summary judgment is appropriate if the pleadings, depositions, admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. A factual dispute between the parties will not defeat summary judgment unless it is both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986). A factual dispute is "material" if it would affect the outcome of the suit under the governing law, and "genuine" if a reasonable jury could return a verdict for the non-moving party. Id.

The application of the rule permitting amendments to complaints to relate back to the date of the original complaint are normally reviewed for an abuse of discretion. Powers v. Graff, 148 F.3d 1223, 1227 (11th Cir. 1998). When a party fails to raise an objection in the district court, however, the objection is reviewable under a plain error standard. United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999). The four requirements of plain error are that an error occurred, the error was plain, it

16

affected substantial rights, and not correcting the error would seriously affect the fairness of the judicial proceeding.  Id.

## Summary of the Argument

The district court properly granted summary judgment for the VA.  A careful analysis of the federal statutes and regulations show that Qian, a temporary employee, was not entitled to a hearing or other procedural review before his termination and revocation of his clinical privileges at the VA.  The VA stated reasons for its determination that Qian's termination and the revocation of his clinical privileges were in the best interests of the VA and no further due process was required.

Furthermore, the district court did not plainly err in failing to permit Qian to amend his complaint within two weeks of trial to add a claim for national origin discrimination.  The amendment would have occurred after the time limitation for bringing the discrimination claim had expired, and the amendment would not have related back to the original complaint under Rule 15(c), Fed. R. Civ. P.  Furthermore, Qian had admitted at his deposition that he had no evidence of discrimination and intended to pursue only the due process claim against the VA.  At any rate, the district court properly concluded that the relevant issue, Qian's entitlement to due process, would be resolved by this lawsuit.  The district court's ruling should be affirmed.

17

**Argument**

## I.    The District Court Properly Granted Summary Judgment in Favor of the VA On Qian's Medical Staff Privileges Claim.

Qian argues that the district court erred in concluding that VHA Handbooks 1100.17 and 1100.19 preclude the application of due process prior to the VA revoking the medical staff or clinical privileges of a temporary employee and erred in concluding that the Miami Medical Staff Bylaws procedures for the revocation of medical staff privileges were inapplicable to temporary employees.  Because Qian's argument ignores the fact that VHA Handbook 1100.19, which governs credentialing and privileging, specifically exempts temporary employees from the its provisions, his contentions are without merit and should be rejected.

Rule 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. v. Zenith Radio

18

Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). In this case, the material facts are not in dispute and a review of the relevant regulations show that the VA is entitled to judgment as a matter of law.

VHA Handbook 1100.19 deals with the hospital privileges of medical staff employed by the VA. VHA Handbook 1100.19 ¶ 1.a. Paragraphs 6.g.2 and 6.g.3 specify in detail the procedures for instituting a revocation of privileges based upon clinical performance and professional conduct. Paragraph 6.g.3(a) states that "[w]hen a revocation of privileges is proposed and combined with a proposed demotion or dismissal, the due process rights of the practitioner will be accommodated by the hearing provided under the dismissal process." Paragraph 6.g.3(a) further states that a "dismissal constitutes a revocation of privileges, whether or not there was a separate and distinct privileging action, and will be reported without further review or due process to the NPDB." Paragraph 6.g.3(b) provides specifically for revocation of privileges of permanent employees appointed under 38 U.S.C. § 7401(1) and states that the revocation procedures should be combined with the discharge procedures. Paragraph 6.g.3(c) applies to "probationary employees appointed under 38 U.S.C. 7401(1)" and "employees appointed under 38 U.S.C. 7405" as Qian was. With respect to the employees appointed under 38 U.S.C. § 7405, the provision states that

"the proposed revocation will be combined with actions to separate the employee under the provisions of MP-5, Part II, Chapter 9 and its VHA Supplement."

As the government explained in its supplemental pleading (DE53), MP-5 was rescinded and replaced by a series of VHA Directives and Handbooks as described in VHA5001, General Introduction and Administration, published on April 15, 2002 (DE53, Exh. B). Specifically, VHA Directive and Handbook 5021, Employee/Management Relations, replaced the provisions of MP-5 relating to adverse and disciplinary actions (id.). Under VHA Directive and Handbook 5021, a temporary employee appointed under 38 U.S.C. § 7405 is not entitled to a review of the involuntary separation. See Employee Management Relations, VHA Directive 5021 VHA Handbook 5021/3 VI. 7, Paragraph 15 (June 1, 2005). Thus, there is no action required to separate a temporary employee. Moreover, 1100.19, paragraph 6.g.3(a) states that "dismissal constitutes the revocation of privileges . . . and will be reported without further review or due process to the NPDB."

The district court also properly noted that the next provision of the VHA Handbook 1100.19 entitled "Management Authority," located on the page following paragraph 6.g.3,specifically precludes due process requirements for termination of temporary VA employees and obviates any necessity to follow any of the procedures outlined in paragraph 6(DE66). The provision states that "[i]ndividuals appointed

20

under authority of 38 U.S.C. 7405 may be terminated when this is determined to be in the best interests of VA, in accordance with provisions of MP-5, Part 11, Chapter 9 and its VHA Supplement, **without regard to the procedural requirements indicated**." (emphasis added). Because MP-5 was replaced with a provision that requires no review of involuntary separations for these types of employees, the district court properly concluded that these provisions, considered together, require no review of either termination or revocation of privileges for temporary employees.

Further, any argument that the Miami Medical Staff Bylaws entitled Qian to a due process hearing prior to the revocation of medical staff privileges is specifically precluded by the language of the Bylaws itself. As the district court properly noted, the preamble to the Miami Medical Staff Bylaws states that it cannot create any rights that are not otherwise provided for in the VHA regulations or by federal law. The district court properly found that Qian, a temporary employee, was not entitled to any due process review.

At any rate, as the district court further noted, Qian "received the benefit of significant due process procedures that in many, if not all, respects followed the procedures required by VHA Handbook 1100.19 and the Medical Staff Bylaws" (DE66). Qian along with his counsel contested his dismissal and the revocation of privileges at the February 22, 2008, hearing. Several committees, which included

21

physicians, had reviewed his conduct and patient records and found reason to recommend his termination of employment and revocation of clinical privileges. The review board and the VA director agreed with the recommendations after the February 11, 2008 hearing with Qian and his attorney. His denial of due process argument should be rejected and summary judgment affirmed.

## II.     The District Court Properly Declined To Permit Qian To Pursue A Title VII Discrimination Claim When Qian Failed To Raise Any Allegations Of Discrimination In His Complaint.

Qian also contends that the district court erred by failing to permit him to pursue a claim for discrimination in this case. Qian argues for the first time on appeal that, because he was a pro se litigant, the court should have allowed him to amend his complaint to include allegations of employment discrimination and the amendment should relate back to the date of the original complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure (Br. at 27). Qian's argument should be rejected.

Two weeks before the scheduled trial date, the district court set a status conference in the case at the VA's request (DE55). The VA had explained in its motion requesting the status conference that during a meeting on September 23, 2019, to discuss the pretrial stipulation, Qian had stated for the first time that he intended to pursue a national origin discrimination claim against the VA despite the fact that his complaint was void of any allegations of discrimination (id.). The VA requested

22

the status conference in order to clarify the issue. In a response to the VA's motion
for the status conference, Qian insisted that he had intended to pursue the
discrimination claim and had been pursuing evidence concerning the VA's treatment
of Caucasian doctors (DE59). He claimed that he was ready to proceed to trial and
objected to any trial delay (id.).

In the order setting the status conference, the court stated that the purpose of
the hearing was to discuss "Plaintiff's Title VII claim and potential continuation of
the trial date" (DE60). The court also ordered the parties to bring to the status
conference "copies of any evidence relevant to Plaintiff's Title VII claim that they
want the Court to consider" (id.). Nevertheless, Qian appeared pro se at the status
conference and produced only his file which he stated contained "the whole package
from the EEOC process" (DE74:3). The district court questioned whether Qian had
alleged discrimination in the complaint and Qian admitted that, although he had
stated in the complaint that the lawsuit was brought under Title VII, he had not stated
that he was discriminated against based upon his national origin nor set forth any
allegations of discrimination (DE74:4-6). His complaint had stated only that he had
been denied due process prior to his termination and the revocation of his clinical
privileges. The court questioned Qian in an effort to determine the nature of Qian's
discrimination claim. Upon questioning, Qian appeared to assert that the VA

discriminated against him by denying him due process because of his Chinese

national origin and claimed that three Caucasian doctors at the VA were "treated

differently":

> The Court:  Here's the problem.  You cannot file a lawsuit,
> not raise a claim and then two weeks before trial say we
> were waiting for the evidence to make the claim, we are not
> asserting that claim.  It just can't work that way.
>
> Mr. Qian: Your Honor, we didn't have the solid evidence.
> I knew as fact there were other Caucasian physicians that
> were treated differently.
>
> The Court: Your claim is not that you were fired because
> of your national origin but because you were denied due
> process because of your national origin.
>
> Mr. Qian: The due process should be applied to all the
> physicians equally.  Unfortunately in this case the plaintiff
> was treated totally different compared to the Caucasian
> physicians, Your Honor.

(DE74:10-11).

The district court further questioned whether Qian had pursued his

discrimination claims before the Equal Employment Opportunity Commission (the

"EEOC").  Qian explained that he had filed an EEOC action claiming discrimination

based upon national origin and had been represented by counsel in the administrative

proceeding (DE74:9-12).  A final agency decision had been issued on August 26,

2009, finding that no discrimination had occurred in Qian's termination or revocation

of clinical privileges (id.).  The EEOC further informed Qian that he had 90 days in which to file a lawsuit in the district court if he intended to challenge the decision (id.).

Although Qian did not request to amend his complaint, the district court informed Qian that any amendment to the complaint to add the necessary allegations of discrimination would no longer be timely and that, at any rate, because his discrimination allegations now appeared to be based upon lack of due process and he had raised the due process claims, the lawsuit would determine whether or not he was entitled by law to due process (DE74:19-21).

The VA further informed the court that, during his deposition, Qian had stated that he intended to proceed only on the due process claim because he had "no smoking gun" to support the discrimination claim (DE74:15).  The VA had attached a copy of the page of the deposition to its summary judgment motion and again presented the page to the court during the status conference (id.).

The court found that Qian should have raised the discrimination claims that he had raised before the EEOC in his complaint and that permitting him to amend the complaint to add the claims would be futile because the claims would be time barred (DE74:19-20).  The court further stated with respect to the discrimination claim that "even though I am denying  – I am not denying it, I am just ruling it is not in the

25

complaint.  Even though you cannot proceed on that claim at the end of the day the results will be the same."  (DE74:20).  In the written minutes memorializing the hearing, the district court stated that Qian had failed to state a claim for national origin discrimination in his complaint and that Qian could "proceed only on the due process claim"(DE62).

To the extent that Qian may have sought to amend his claim to include allegations in support of a discrimination claim, the district court properly found that an amendment would have been time-barred.  Title VII of the Civil Rights Act ("Title VII") prohibits discrimination on the basis of race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2.  Section 2000e-16 applies Title VII to the federal government.  Title VII is the exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination.  See Brown v. General Services Administration, 425 U.S. 820, 96 S. Ct. 1961 (1976).  After an agency or the EEOC takes final action on a complaint (or fails to take action within a certain time), "an employee or applicant [who is still] aggrieved . . . may file a civil action . . . , in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."  Id. at 215 (quoting 42 U.S.C. § 2000e-16(c)).  The civil action under Title VII must be filed in the district court within 90 days of the claimant's receipt of  a right-to-sue letter from the EEOC.  See 42 U.S.C. § 2000e-5(f)(1).

Failure to file the action within the statutory limitation results in dismissal of the action unless the claimant can show that he is entitled to the extraordinary remedy of equitable tolling.  <u>Bost v. Fed. Express Corp.</u>, 372 F.3d 1233, 1242 (11th Cir. 2004). This Court has held that equitable tolling is inappropriate when the claimant has failed to act with due diligence.  <u>Id.</u>

While Qian filed a complaint in the district court within 90 days, the complaint failed to allege any facts at all in support of discrimination based upon national origin or any other form of discrimination.  Qian admitted during the status conference that the only reference to discrimination in the complaint was his citation to Title VII (DE74:5-7).  The court further pointed out that Qian had sufficient information to present his discrimination allegations before the EEOC, yet Qian had not attempted to amend his complaint to add any allegations of discrimination to his complaint. Furthermore, because Qian should have filed the discrimination action within 90 days of the August 26, 2009, letter from the EEOC,  a discrimination action would have been long overdue on September 30, 2010, when the status conference occurred.

Qian's argument, raised for the first time on appeal, that his <u>pro</u> <u>se</u> complaint should be liberally construed to include a discrimination claim does not resolve the problem of his time-barred claim.  He contends that Rule 15 (c), Fed. R. Civ. P., would permit the claim to relate back to the date of the original filing of the

27

complaint.  First, Rule 15(a), Fed. R. Civ. P.,  provides an automatic right to amend

pleadings once before a response is filed, or if no response is required, within 21 days

after the original pleading was served.  Otherwise, the party must seek leave of court

or the consent of the opposing party.  Even if leave is granted or approval of the

opposing party is conceded, the effect of the amendment, however, will be restricted

by Rule 15(c).  Rule 15(c) states in relevant part as follows:

> (C) Relation Back of Amendments
> (1) When an Amendment Relates Back.  An amendment to a pleading
> relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of
>> limitations allows relation back;
>> (B) the amendment asserts a claim or defense that arose out
>> of the conduct, transaction, or occurrence set out  – or
>> attempted to be set out – in the original pleading; or
>> (C) the amendment changes the party or the naming of the
>> party against whom a claim is asserted . . .

Rule 15(c), Fed. R. Civ. P.

Because more than 21 days had passed and the VA did not consent at the status

conference to an amendment, Qian was only entitled to amend his complaint if the

district granted him leave to do so.  The decision to permit an amendment is generally

within the discretion of the court.  Powers v. Graff, 148 F.3d 1223, 1227 (11th Cir.

1998).  It is proper, however, for the court to deny the request to amend when the

amendment would be futile because the newly asserted claims would be subject to

28

dismissal as a matter of law.  Hall v. United Ins. Co. Of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)).  Furthermore, this Court has held that it is appropriate to deny an amendment for substantial unjustifiable delay.  Jennings v. BIC Corp., 181 F.3d 1250, 1258 (11th Cir. 1999).

With respect to whether a claim arose out of the same conduct, transaction, or occurrence set out in the original pleading for purposes of Rule 15(c), the Supreme court held in Mayle v. Felix, 545 U.S. 644, 125 S. Ct. 2562, 2569-75 (2005), that the underlying facts of the amended claim must coincide with the facts of the original claim.  In Mayle v. Felix, the Supreme Court held, with regard to Fed. R. Civ. P. 15(c)(2): "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.[1] Mayle v. Felix, 545 U.S. at 648, 125 S. Ct. at 2566.  In a 28 U.S.C. § 2254 petition, Felix had timely alleged that his conviction violated the Fifth Amendment because the videotaped statements of a witness were played for the jury in violation of Felix's right to confront the witness.  But five months outside of the limitations period imposed under the AEDPA, Felix moved to amend his petition to allege a second

---

[1]    The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA").

29

constitutional ground:  that his own pretrial statements to the police had been coerced and that appellate counsel had been ineffective for failing to press the matter on direct appeal.  The district court denied his motion to amend, under Fed. R. Civ. P. 15(c)(2) and found that relation back was not in order . . . because Felix's "allegedly involuntary statements to police d[id] not arise out of the same conduct, transaction or occurrence as the videotaped interrogation of [prosecution witness] Kenneth Williams."  Id.  It not sufficient that Felix's Fifth and Sixth Amendment claims attack the same criminal conviction.

The Supreme Court found that the key words are "conduct, transaction or occurrence," which should be not be boundlessly construed, "mindful of Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them]" as prescribed by AEDPA.  545 U.S. at 656, 125 S. Ct. at 2570 (internal citation omitted).  Here, Qian's claims arose out of the termination of his employment and the revocation of his clinical privileges; however, the facts relevant to whether he was discriminated against because he was treated differently from three Caucasian physicians employed by the VA differ from the facts relevant to whether VA rules entitle him to due process prior to termination or revocation of his clinical privileges.  Similar to the AEDPA, the stringent time limitations in employment discrimination

cases are in place to encourage litigants to promptly pursue legitimate discrimination claims.

This case is not like Caldwell v. Martin Marietta Corp., 632 F.2d 1184 (5th Cir. 1980), where the plaintiff's amendment to his complaint to add a Title VII claim was deemed to relate back under Rule 15(c). The plaintiff in that case had originally filed a lawsuit alleging racial discrimination under 42 U.S.C. § 1981 and then amended to add the Title VII claim prior to defendant filing an answer in the case. This Court ruled that the amendment related back because the amendment alleged the same facts and merely sought to recover under an additional basis. Id. at 1188. Here, the factual allegations necessary to make a claim of discrimination based upon national origin are simply not contained in Qian's complaint.

Furthermore, because Qian has raised this Rule 15(c) argument for the first time on appeal, his argument can only be reviewed for plain error. Farley v. Nationwide Mutual Insurance Co., 197 F.3d 1322, 1330 (11th Cir. 1999). The four requirements for plain error are that an error occurred, the error was plain, it affected substantial rights, and not correcting the error would seriously affect the fairness of the judicial proceeding. Id. Even if the court erred in finding that an amendment would be time-barred, Qian's substantial rights were not affected by the ruling nor did the error affect the fairness of the proceeding. At least at the time of the status

31

conference, Qian's discrimination claim seemed to be the alleged lack of due process based upon his allegation that three Caucasian physicians were dealt with differently (DE74:18-19).  The key question was whether Qian was entitled to due process and Qian had raised that issue in his complaint.  The resolution of that issue would resolve the entire case (DE74:18).  Thus, even if he was denied due process for a discriminatory reason, as he appeared to allege at the status conference, there was no remedy if he was not legally entitled to due process.  Additionally, Qian had already admitted at his deposition that he lacked any evidence of discrimination and had intended to pursue only the due process claim against the VA and the VA had relied upon his representation. Qian's belated attempt to add a national origin discrimination claim within weeks of trial, after having presented his discrimination claim to the EEOC more than a year earlier, is sufficient reason for the district court to have denied the amendment.  Qian cannot show plain error requiring reversal of the court's ruling.

**Conclusion**

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

Wifredo A. Ferrer
United States Attorney

By:    _____
Lisette M. Reid
Assistant United States Attorney

Anne R. Schultz
Chief, Appellate Division

Laura Thomas Rivero
Assistant United States Attorney

Of Counsel

33

**Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **7,379 words**, excluding the parts of the brief exempted by Fed. R. App. P.  32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Corel Word Perfect X4, 14-point Times New Roman.

**Certificate of Service**

I hereby certify that an original and 6 copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 17th day of March 2011, and that, on the same day, the foregoing brief was electronically uploaded to the Eleventh Circuit Court of Appeals' Internet web site at www.ca11.uscourts.gov (see attached Brief Upload Result Page), and mailed via United States mail to Mark J. Berkowitz, P.A., 1620 W. Oakland Park Boulevard, Suite 300, Fort Lauderdale, Florida 33311.

_____
Lisette M. Reid
Assistant United States Attorney

*ab*

35