# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

TIE QIAN, M.D.

                 Appellant,

                                               **CASE NO. 10-15141-FF**

vs.

ERIC K. SHINSEKI, as
Secretary of the Department of
Veterans Affairs,

                 Appellee.

_____/

---

## APPELLANT'S REPLY BRIEF

---

Mark J. Berkowitz, P.A.
1620 W. Oakland Park Blvd.
Suite 300
Ft. Lauderdale, Florida 33311
(954) 527-0570 Telephone
(954) 915-3072 Telecopier
E-mail: mjb2157@aol.com.
Fla. Bar No. 369391

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE**

**DISCLOSURE STATEMENT**

Undersigned counsel for the Appellant hereby certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case.

Mark J. Berkowitz, P.A.

Wilfredo A. Ferrer

Tie Qian, M.D.

Lissette Reid

Eric K. Shinseki

Anne R. Shultz

# **TABLE OF CONTENTS**

                                                                                    <u>Page</u>

1.    Table of Authorities                                          -iii-

2.    Argument                                                        1

      Appellant Was Denied Procedural Due Process
      In That The Agency Revoked His Medical Staffing
      Privileges Without Affording Him A Hearing


      The District Court Erred By Failing to Allow          15
      Appellant to Amend His Complaint To Include
      A Discrimination Claim

3.    Conclusion                                                     22

4.    Certificate of Service                                         24

## TABLE OF AUTHORITIES

Page

1.    *Andrews* v. *Orr*, 851 F.2d 146, 151 (6th Cir. 1988).    20

2.    *Board of Regents* v. *Roth*, 408 U.S. 564, 92 S.Ct. 2701,    7
       33 L.Ed.2d 548 (1973).

3.    *Bolling* v. *Sharpe*, 347 U.S. 497,    7
       74 S.Ct. 693, 98 L.Ed. 884 (1954).

4.    *Brown* v. *Shinbaum*, 828 F.2d 707 (11th Cir. 1987)    16

5.    *Burnley* v. *Thompson*, 524 F.2d 1233 (5th Cir. 1975).    7

6.    *Connell* v. *Higginbotham*, 403 U.S. 207, 91 S.Ct. 1772,    9
       29 L.Ed.2d 418 (1971).

7.    *Cooper* v. *Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5    8
       (1958).

8.    *Daly* v. *Sprague*, 675 F.2d 716 (5th Cir. 1982).    9

9.    *Donnelly* v. *Yellow Freight System, Inc.*, 874 F.2d 402    21
       (7th Cir. 1989).

10.   *Faucher* v. *Rodziewicz*, 891 F.2d 864 (11th Cir. 1990).    15

11.   *Gonzalez* v. *Freeman,* 334 F.2d 570 (D.C.Cir.1964).    11

12.  *Gregory v. Georgia Department of Human Resources,*                20
     355 F.3d 1277 (11th Cir. 2004).

13.  *Meyer* v. *Nebraska*, 262 U.S. 390, 43 S.Ct. 625,                  8
     67 L.Ed. 1042, (1923).

14.  *National Ins. Co*. v. *Tidewater Co*., 337 U.S. 582,               8
     69 S.Ct. 1173, 93 L.Ed. 1556 (1949).

15.  *Northeast Georgia Radiological Associates* v. *Tidwell,*           8
     670 F.2d 507 (5th Cir. 1982).

16.  *Old Dominion Dairy* v. *Secretary of Defense*,                    11
     631 F.2d 953 (D.C.Cir.1980).

17.  *Perry* v. *Sinderman*, 408 U.S. 593, 92 S.Ct. 2701,                6
     33 L.Ed.2d 570 (1972)

18.  *Ruiz* v. *Shelby County Sheriff's Department*, 725 F.2d 388       17
     (6th Cir. 1984), *cert. denied*, 469 U.S. 1016, 105 S.Ct. 428,
     83 L.Ed.2d 355 (1984).

19.  *Sessions* v. *Rusk State Hospital*, 648 F.2d 1066 (5th Cir. 1981).  20

20.  *Shahawy* v. *Harrison*, 778 F.2d 636 (11th Cir. 1985).           7

21.  *Shapiro* v. *Thompson*, 394 U.S. 618, 89 S.Ct. 1322,               7
     22 L.Ed.2d 600 (1969).

22.  *Shaw* v. *Hospital Authority of Cobb County*, 507 F.2d 625         7
     (5th Cir. 1975).

-iv-

22.   *Tipler* v. *E.I. DuPont deNemours and Co.,*                    20
      443 F.2d 125 (6th Cir. 1971).

23.   Todorov v. DCH Healthcare Authority, 921 F.2d 1438              1
      (11th Cir. 1991)

24.   *United States* v. *Humphrey*, 164 F.3d 585, (11th Cir. 1999)   17

25.   *United States* v. *Olano*, 507 U.S. 725, 113 S.Ct. 1770,       17
      123 L.Ed.2d 508 (1993).

26.   *Woodbury* v. *McKinnon*, 447 F.2d 839 (5th Cir. 1971).        8

27.   *Wyatt*  v. *Tahoe Forest Hospital District*, 174               14
      Cal.App.2d 709, 345 P.2d 93,97 (1959).

28.   *Zipes* v. *Trans World Airlines, Inc*., 455 U.S. 385,          17
      102 S.Ct. 1127 (1982).

**I.**

**APPELLANT WAS DENIED PROCEDURAL DUE PROCESS IN THAT THE AGENCY REVOKED HIS MEDICAL STAFFING PRIVILEGES, WITHOUT AFFORDING HIM A HEARING.**

In its Answer Brief, Appellee has merely repeated the grievous reversible error, previously committed by the district court, by confusing what process was due for the revocation of Appellant's medical staffing privileges, as compared to the process, which was due upon his dismissal from employment. (*See*, Appellee's Answer Brief, at pps. 5—6). More specifically, Appellee used employment termination within its procedures to explain the revocation of medical staffing privileges. (See, Appellee's Answer Brief, at p. 8)

Unfortunately, the district court also confused the process of applying for medical staffing privileges, with the situation, as we have here, where an institution is seeking to revoke a physician's existing medical staffing privileges. **[R: 66].** The district court incorrectly cited *Todorov* v. *DCH Healthcare Authority*, 921 F. 2d 1438, 1463 (11th Cir. 1991), for the proposition that a physician does not have a protected property interest in the continuation of his or her medical staffing privileges.

In order to be entitled to procedural due process, Dr. Qian must establish that he had a property interest that was abridged. See, U.S. Const. amend. V. It is clear that an at-will employee, such as Dr. Qian, has no property interest in his continued employment. *See Davis* v. *Mobile Consortium of CETA*, 857 F.3d 737, 741 (11th Cir. 1988). However, the Eleventh Circuit has determined that a physician's medical staff privileges to a hospital can be a property interest protected by the Constitution's due process guarantees. *El Shahawy* v. *Harrison*, 875 F.2d 1529, 1532—33 (11th Cir. 1989). But this does not mean that every physician with medical staff privileges has a protected property interest in those privileges. The determination of whether medical privileges are a protected property interest depends on whether there is an entitlement created by 'statute, legal rule, or mutually explicit understanding.' *Todorov* v. *DCH Healthcare Authority*, 921 F.2d 1438, 1463 (11th Cir. 1991).

**[R: 62].**

However, in *Todorov*, the Eleventh Circuit was addressing the situation where a physician was merely applying for medical staffing privileges; a situation which we are not confronting in the instant case. As we will explain below, the Veterans Administration's internal procedures clearly and unequivocally, guaranteed a hearing to the physician, prior to the revocation of medical staffing privileges.

Moreover, the Appellee frequently cites portions of the Veterans Administration policies and procedures, which are not applicable in this case. For example, the Appellee, repeatedly on pages 12, 13, 15, 19—20 of its Answer Brief, states that VHA Handbook 1100.19, at paragraph 6 (g)

3(a) asserts that a dismissal[1] constitutes a revocation of hospital privileges;[2] It is important to point out that none of these provisions actually apply to the Appellant because his privileges were revoked by the Professional Standards Board, two weeks prior to his termination, which was issued by the Human Resources Management Service. Although termination may arguably cause a revocation of privileges, this was not the sequence of events here and irrespective of the nature of the termination; due process is required prior to the revocation of medical staffing privileges.

   The Appellee has made incorrect or far reaching legal assertions, without any supporting legal foundation. For example, on page 18 of its Answer Brief, the Appellee asserted that "VHA Handbook 1100.19, which governs credentialing and privileging, specifically exempts temporary employees from its provisions." However, contrary to the Appellee's assertions, this statement cannot be found within 1100.19. The Appellee further stated that according to the district court, the VHA by-laws need not be considered simply because the Preamble of the By-Laws state that

---

[1] *See*, Appellee's Answer Brief, at pps. 19--20.

[2] *See*, the Appellee's Answer Brief, at p. 15

"[t]hese By-Laws and the rules and regulations of the medical staff and governing body by-laws (e.g. Handbooks, Directives, Manuals and Circulars) must not conflict. These By-Laws do not create any rights or liabilities not otherwise provided for in VHA regulations or Federal law and regulations." Again, this is a broad and far reaching legal conclusion, without legal precedent or support. The By-Laws are comprised of a summary Handbook 5021 and Handbooks 1100.19 and 100.17. Procedural issues are specifically addressed in Handbook 5021 on employment; and procedural issues for medical privileges are referred to in Handbooks 1100.19 and 1100.17. More importantly, neither the VHA Handbooks, nor the By-Laws, distinguish between a permanent physician and temporary physician, with respect to the medical staff privileges issues.

There is no inconsistency among the By-Laws and the VHA Handbooks. Therefore both the Appellee and the district court erred in disregarding the By-Laws.

Moreover, the Appellant was never previously informed by the employer that because he was a "temporary employee," he had no due process rights with regard to the revocation of staff privileges. Instead,

Appellant was repeatedly informed by written notices, that he would receive all applicable due process rights. In fact, the latest version of Handbook 1100.19, a new sentence was added on page 51, indicating that, "temporary employees must be provided with due process procedures that are provided for in the revocation of privileges, in addition to the privileges contained VA Handbook 5021, for separation from employment." Therefore, the assertion that a temporary employee has no due process rights for medical staff privileges represents the Appellee's current entirely erroneous position, which was used only against the Appellant.

The Appellee also incorrectly asserts that any error was cured by a subsequent hearing, prior to making the revocation public in the National Practitioner Data Bank. This assertion is incorrect, because once a revocation occurred, without the appropriate due process, substantial damage has already resulted, irrespective of any post damage remedies. For example, the Appellee has stated that "[t]he Review Panel consisted of three physicians from three different VA hospitals." However, none of these three physicians was specialized in Physical Rehabilitation or Spinal Cord Injury, in the practice areas in which Appellant is specialized, despite the fact that,

according to the VHA Handbooks (for example, 1100.19, page 22, 6g (2) (d)), By-Laws and the letters issued to Appellant (for example, the notice of Revocation of Privileges, dated September 14, 2007), at least two members of the panel should be members of the same profession. If, the employer reported to the National Practitioner Data Bank that, as the Appellee argued, the Appellant lost his medical privileges because he lost his employment as a temporary employee, then Appellant's reputation would sustain less damage. However, the Appellee erroneously represented to the National Practitioner Data Bank that all of the Appellant's due process rights were preserved by the establishment of a management Review Team, as well as a Professional Standards Board.

Furthermore, irrespective of the nature of the agency's written policies and procedures, regarding the granting or denial of hospital staffing privileges, the Appellant is entitled to a modicum of due process, prior to the taking of an adverse personnel action, with regard to his hospital staffing privileges. The applicable written policies offered by the employer merely represent a starting point for the applicable constitutional analysis.

The process which the Appellant was given fell considerably short of the constitutionally mandated requirement. As we will explain below, contemplated within Appellant's protected liberty interest is the right to practice his profession; and before this right can be abridged, by the revocation of medical staffing privileges, as an aggrieved employee, he is entitled to a hearing, conforming to the minimal requirements of procedural due process, encompassing notice and an opportunity to be heard. *See, Bolling* v. *Sharpe*, 347 U.S. 497, 499—500, 74 S.Ct. 693, 694—695, 98 L.Ed. 884, 887 (1954).

It is abundantly clear that Appellant has a "liberty interest" emanating from his state created right to practice medicine. *See, Board of Regents* v. *Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1973). His right to practice his profession may only be restricted upon a showing that: (1) he was provided with an adequate procedural due process hearing; and (2) any decision to abridge Appellant's liberty interest was grounded upon a rational basis designed to further a legitimate state interest. *See, Shapiro* v. *Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). *See also, Shaw* v. *Hospital Authority of Cobb County*, 507 F.2d 625 (5th Cir. 1975).

Even after the granting of a hearing, the due process inquiry does not end. The form of the procedural due process hearing is governed by a flexible standard, which expands and contracts according to the nature of the interest in question. *See, Woodbury* v. *McKinnon*, 447 F.2d 839 (5th Cir. 1971).

Perhaps even more importantly, the agency has ignored the clear weight of precedential authority, which mandates that a physician receive some form of hearing, prior to the revocation of his or her medical staff privileges at a hospital, which receives federal funding. In short, a property interest[3] existed in Appellant's medical staff privileges, for which he was entitled to a hearing, before the taking of an adverse action by the public employer. *See, Northeast Georgia Radiological Associates* v. *Tidwell,* 670

---

[3]     The terms "liberty" and "property" are broad and not defined with exactness, see, *National Ins. Co.* v. *Tidewater Co.*, 337 U.S. 582, 646, 69 S.Ct. 1173, 1209, 93 L.Ed. 1556, 1596 (1949). (Frankfurther, J., dissenting), both interests are protected by the Due Process Clause of the Fourteenth Amendment. *See, Meyer* v. *Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923). There can be no dispute here that the agency is a public institution, and its acts constitute state action under the Due Process provisions of the Fourteenth Amendment. *See, Cooper* v. *Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5, 19 (1958).

F.2d 507 (5th Cir. 1982). [4] Medical staff privileges embody such a valuable property interest that notice and a hearing should be held prior to its termination and or withdrawal, absent some extraordinary situation where a valid government or medical interest is at stake. *See, Board of Regents* v. *Roth*, 408 U.S. 564, 569—70 & n. 7 &8, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Burnley* v. *Thompson*, 524 F.2d 1233 (5th Cir. 1975). It is undisputed here, that no such process was afforded to the Appellant, resulting in a clear due process violation, which was not corrected by the district court.

Because the Appellee failed to adequately present and define the applicable procedures set forth in the agency's by-laws and handbooks, it is

---

[4] Even though Appellant was not employed pursuant to a permanent appointment, that fact does not diminish his standing to bring a claim under the Due Process Clause of the Fourteenth Amendment. As the Supreme Court held in *Perry* v. *Sinderman*, 408 U.S. 593, 602, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 570 (1972), a legitimate claim may arise from "mutually explicit understandings," even though the aggrieved party did not possess a permanent position. Appellant had a clearly implied promise of continued employment, *see Connell* v. *Higginbotham*, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418 (1971), which was sufficient for prosecuting his due process claim. Additional authority for the proposition that medical staff privileges amount to a protected property interest, include *Shahawy* v. *Harrison*, 778 F.2d 636, 643 (11th Cir. 1985); *Daly* v. *Sprague*, 675 F.2d 716, 727 (5th Cir. 1982).

important to restate those procedures here.  Contrary to the representation of the Appellee, the By-laws of the Miami Veterans Administration System Medical Staff, entitled, "Fair Hearing and Appeals Process for Medical Staff," clearly provides that detailed hearing procedures are to be invoked, prior to the implementation of personnel decisions, regarding the revocation of medical staff privileges **[R: 29]**, precisely the conduct by the agency, which is at issue in this case.

More specifically, Section V of the By-laws states that a practitioner's staff privileges may be suspended for a period of thirty days; and then, Special Professional Standards Board is to be convened. **[R: 29]**. In accordance with this policy, the medical practitioner must receive written notice of the agency's intent to propose changes in the practitioner's privileges, and the right to be represented by counsel. **[R: 29].** Thereafter, the practitioner must be allowed to review all relevant evidence upon which the proposed changes in privilege are based; and after that review, the practitioner must be allowed to respond to the agency's notice of intent within ten business days. **[R: 29].**

Information regarding the Special Professional Standards Board findings and recommendations are then to be forwarded to the Medical Executive Council for a final recommendation. **[R: 29].** If the medical professional requests a hearing, the medical center director must appoint a review panel of three professionals within five business days in order to conduct a review; and at least two members of the review panel must be comprised of two panelists with the same medical specialty as the aggrieved physician. **[R: 29].** The review panel must complete its review process and submit its findings, within fifteen days; and thereafter, the findings and or the report is to be submitted to the medical director. **[R: 29].**

It is important to emphasize that when the revocation of staff privileges is proposed and consolidated with a proposal for demotion or dismissal, the specific due process rights of the medical practitioner are to be safeguarded, by the hearing process which is also provided for in the case of a terminated employee. **[R: 29].** Moreover, for those employees appointed under 38 U.S.C. Section 7405, as the Appellant in this case, the proposed revocation will be combined with dismissal actions. **[R: 29].**

Furthermore, VHA Handbook 1100.19, addresses credentialing and the privileging of "[a]ll [VHA] individuals who are permitted by law and the facility to provide patient care services independently. . ." **[R: 29].** Subsection 6(g) (3) of this provision governs the revocation of staff privileges and it specifically states, due process procedures mandate that a hearing for the aggrieved practitioner be held.

In addition, VHA Handbook 1100.17, Paragraph 6(a)(2), governing reports to the National Practitioner Data Bank, provides that the aggrieved physician must be afforded due process, as outlined in VHA Handbook 1100.19, entitled, "Credentialing and Privileging." Prior to issuing reports to the National Practitioner Data Bank,[5] VA medical center due process procedures, as set forth under the VHA Credentialing and Privileging Policy, found in the VHA Handbook 1100.19, entitled, "Credentialing and Privileging," must be implemented.  Similar to the By-laws as explained above, under the Miami Veterans Administration System, VHA Handbook 1100.17 does not distinguish between temporary physicians, appointed

---

[5]  This report was particularly harmful to the Appellant, since it harmed his ability to find other employment, as well as negatively impacting his professional reputation.

under 38 U.S.C. Section 7405 (a)(1)(A), from permanent employees, appointed under 38 U.S.C. 7401 (1). **[R: 29]**

The district court refused to properly recognize the significance of the Appellant's federal constitutional claim; and the minimal due process rights which are associated with that claim. [**R: 66**]. Illustrative of this lack constitutional analysis is the decision of the district court in *Old Dominion Dairy* v. *Secretary of Defense*, 631 F.2d 953 (D.C.Cir.1980), where the Defense Department determined that the dairy lacked "integrity" and rejected the dairy's bids on government milk contracts previously held by the dairy. The District of Columbia Circuit  found a cognizable liberty interest for the corporation and held that the dairy was entitled to challenge the government's actions on due process grounds, citing *Gonzalez* v. *Freeman,* 334 F.2d 570 (D.C.Cir.1964):

Thus, to say that there is no 'right' to government contracts does not resolve the question of justiciability. Of course, there is no such right; but that cannot mean that the government can act arbitrarily, either substantively or procedurally, against a person or that such a person is not entitled to challenge the processes and the evidence before he is officially declared for government contracts.

Because a property interest existed in Appellant's medical staff privileges, he had a viable due process challenge to the agency's procedure, which summarily denied him the right to a pre-determination hearing. The entry of summary judgment was clearly reversible error, since Appellant was clearly entitled to a hearing before any adverse institutional action by the credentialing and privileging body of the VA Medical Center. (See, VA Handbook, 1100.17, 1100.19 **[R: 29]**).

Central to a physician's livelihood is his ability to practice in a hospital.

It is common knowledge that a physician who is not permitted to practice his profession in a hospital as a practical matter [is] denied the right to fully practice his profession. In this day of advanced medical knowledge and advanced diagnostic techniques much of what a physician or surgeon must do can only be performed in a hospital.

*Wyatt* v. *Tahoe Forest Hospital District*, 174 Cal.App.2d 709, 345 P.2d 93,97 (1959).

Appellant was clearly denied procedural due process based upon the fact that he was not given a hearing, or even, the opportunity to adequately respond to the disciplinary allegations against him, *prior to entry  of a determination, revoking his medical staffing privileges.* There is no

substitute for such a constitutionally mandated procedure. The due process violation was particularly egregious since erroneous information was communicated by Appellee to the National Practitioner Data Bank, thereby improperly harming Appellant's ability to secure future employment in the medical profession.

Under these circumstances, the district court ratified a constitutionally infirm procedure; and hence the determination of the district court on the central due process issue must be vacated and reversed. *See*, *Faucher* v. *Rodziewicz*, 891 F.2d 864 (11th Cir. 1990). No other course of action will safeguard the liberty and property interest, possessed by Appellant in his medical staffing privileges.

## II.
## THE DISTRICT COURT ERRED BY FAILING TO ALLOW APPELLANT TO AMEND HIS COMPLAINT TO INCLUDE A DISCRIMINATION CLAIM.

Appellant's *pro se* complaint contained a reference to discrimination, under Title VII of the Civil Rights Act of 1964, as amended, thereby preserving this claim, subsequent to the issuance of the Right to Sue Memorandum by the Equal Employment Opportunity Commission. **[R: 1].**

There is no question that Appellant properly exhausted his administrative remedies, with regard to his discrimination claim, before the Equal Employment Opportunity Commission. However, admittedly, the *pro se* complaint did not properly separate the discrimination claim as a separate and distinct cause of action.

The Eleventh Circuit has repeatedly noted that special care with which *pro se* litigants must be treated and this Court has further explained that such litigants "occupy apposition significantly different from that occupied by litigants represented by counsel." *See, Brown* v. *Shinbaum,* 828 F.2d 707 (11th Cir. 1987). Because of the unique status of *pro se* litigants, it would be inappropriate to automatically apply rules applied in such cases to those cases where parties are represented by counsel, educated in established court procedures. The failure of the district court to recognize the status of the Appellant as *a pro se* litigant; indeed constituted *plain error.* Due to this failure of recognition, an error occurred below, the error was plain, the error affected substantial rights and finally, not correcting the error would seriously affect the fairness of the judicial proceeding. *See, United States* v.

*Humphrey*, 164 F.3d 585, 588, n.3 (11th Cir. 1999) (*citing United States* v.

*Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

In addition, while the procedural requirements mandated by Title VII of the Civil Rights Act of 1964, as amended, appear to be absolute, the United States Supreme Court has held that " . . . filing a timely charge of discrimination with the Equal Employment Opportunity Commission is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes* v. *Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127 (1982). Therefore, a failure to comply with the ninety day filing requirements proscribed by 42 U.S.C. Section 2000(e)-5(f)(1) additionally is not a jurisdictional bar to a plaintiff's suit, but rather an affirmative defense to be pled by the defendant in a Title VII action. *See, Ruiz* v. *Shelby County Sheriff's Department*, 725 F.2d 388, 391 (6th Cir. 1984), *cert. denied*, 469 U.S. 1016, 105 S.Ct. 428, 83 L.Ed.2d 355 (1984).

Moreover, contrary to the Appellee's false assertion,[6] the Appellant never stated on the record that he had no evidence that the Veterans Administration discriminated against him.  The fact of the matter is that the Appellant's prior counsel unfortunately missed the deadline to initiate discovery on the discrimination issue. Therefore, the Appellant was barred from developing the record in the administrative process regarding his discrimination claim; and certainly, moving forward with discovery on the discrimination claim in the federal district court is critical to the vindication of Appellant's rights. Therefore, it is imperative that this matter be remanded back to the district court, in order to allow the Appellant to develop the record below with respect to his discrimination claim.

Appellee made another incorrect statement on p. 22 of its Answer Brief, by stating that "during a meeting on September 23, 2010, to discuss the pre-trial stipulation, QIAN had stated for the first time that he intended to pursue a national origin discrimination claim against the VA." Before this meeting, the Appellant had indicated on multiple occasions that he intended to pursue a national origin discrimination claim by citing Title VII and by

---

[6] *See*, the Appellee's Answer Brief, at p. 3.

requesting information about the other three physicians who had been suspended, by presenting evidence from the administrative investigation.

Appellant also takes issue with Appellee's statement on page 17 of the Answer Brief, that "(a)t any rate, the district court properly concluded that the relevant issue, Qian's entitlement to due process, would be resolved by this lawsuit," and Appellant disputes the representation on page 30 of the Answer Brief, "(t)hus, even if he was denied due process for a discriminatory reason, as he appeared at the status conference, there was no remedy if he was not legally entitled to due process." First even temporary employees cannot be terminated contrary to Title VII. Second the discrimination claim is separate and apart from the due process issue. Third, Appellant maintains that there is a discrimination issue with regard to the revocation of privileges, in that he was treated differently than Caucasian physicians.

Allowing an amendment of the complaint, even though the proceeding was close to the trial date, the Appellee would not have been prejudiced by such an amendment. Appellant was diligent in pursuing his claims as a *pro se* litigant; and he lacked constructive knowledge of what he needed to do to

properly draft the discrimination count within the *pro se* complaint. *See*, *Andrews* v. *Orr*, 851 F.2d 146, 151 (6th Cir. 1988).

Moreover, Federal Rule of Civil Procedure 15(c) states " . . . whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Where a claim of discrimination is at issue, the federal courts should not allow procedural technicalities to preclude Title VII complaints. *See, Gregory v. Georgia Department of Human Resources,* 355 F.3d 1277 (11th Cir. 2004); *Tipler* v. *E.I. DuPont deNemours and Co.,* 443 F.2d 125, 131 (6th Cir. 1971).

Barring technicalities from de-railing a discrimination action is further illustrated by the former Fifth Circuit's decision in *Sessions* v. *Rusk State Hospital*, 648 F.2d 1066 (5th Cir. 1981), where a plaintiff filed a racial discrimination charge with the Equal Employment Opportunity Commission, and following his receipt of the Right to Sue Letter, he filed an action in district court, pursuant to 42 U.S.C. Section 1981, within the required ninety day period. Seven months later, the plaintiff was granted

permission to amend his original complaint, to include a discrimination claim pursuant to Title VII. In denying the defendant's motion to dismiss the plaintiff's Title VII claim, the Fifth Circuit held that the plaintiff's amended complaint asserting the Title VII claim, related back to the original complaint and was therefore, timely filed, despite the fact that plaintiff's initial Section 1981 claim was barred by the Eleventh Amendment. *Id.*, at 1068.  In reaching this conclusion, the Fifth Circuit stated:

> So long as the Title VII claim is based on the discrimination originally charged in the complaint, allowing it to relate back to the date of filing the Section 1981 claim works no hardship on the defendant for the original complaint furnished adequate notice of the nature of the suit.

> *Id,* at 1069, *accord*, *Donnelly* v. *Yellow Freight System, Inc.*, 874 F.2d 402 (7th Cir. 1989).

It cannot be disputed that Appellee was previously on notice of Appellant's discrimination claim. **[R: 1].** Based upon the foregoing authority, contrary to the reasoning and analysis of the district court, it would not have been futile to allow the amendment; and certainly, as noted above, Appellee would not have been prejudiced by a delay in the prosecution of Appellant's claims. Therefore, the district court committed

reversible error by failing and or refusing to allow Appellant to pursue his stated discrimination claim.

## III.
## CONCLUSION

The termination of Appellant's medical staffing privileges constituted the impairment of a property interest, and he was not afforded the minimum guarantee of procedural due process. The district court committed reversible error by failing to recognize this fundamental principle.

Even in the absence of an explicit rule or policy guaranteeing this right, Appellant's claim to a protected liberty and property interest in his medical staffing privileges are grounded in an understanding, recognizing that this benefit is secured. Appellant's claim to an entitlement of due process is even stronger in this case, because the applicable policies and procedures did require Appellee to grant him a hearing, prior to the revocation of privileges and or credentialing.

Finally, Appellant was prosecuting his case before the district court without the representation of counsel. He applied his best efforts to preserve his discrimination claim within the complaint which was filed before the

district court.  As a pro se litigant, he was diligent in pursuing his claims, but he did not have the benefits of representation by counsel. As a result of the lack of representation, the complaint before the district court was in-artfully drafted; and certainly, allowing Appellant the opportunity to amend his complaint, to include the discrimination allegations, would not have prejudiced the interests of the Appellee.

On both counts above, the district court committed reversible error. Therefore, the order of summary judgment should be vacated and this case should be remanded to the district court, in order to provide Appellant with a full opportunity to litigate all of his claims.

Respectfully submitted,

Mark J. Berkowitz, P.A.
Attorney for Appellant
1620 W. Oakland Park Blvd.
Suite 300
Ft. Lauderdale, Florida 33311
(954) 527-0570 Telephone
(954) 915-3072 Telecopier
E-Mail: mjb2157@aol.com.
Fla. Bar No. 369391


/s/ Mark J. Berkowitz
By: Mark J. Berkowitz

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was sent by regular mail on this 14th day of April, 2011, to Lissette Reid, Assistant U.S. Attorney, 99 N.E. 4th Street, Third Floor, Miami, Florida 33132.

<u>/s/ Mark J. Berkowitz</u>
By: Mark J. Berkowitz